William P. Ramey, III
Utah Bar No. 10901
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
wramey@rameyfirm.com
**Attorneys for Portus Singapore PTE Ltd.,**
**& Portus PTY Ltd.**

## THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### CENTRAL DIVISION

| | |
|---|---|
| **PORTUS SINGAPORE PTE LTD., &**<br>**PORTUS PTY, LTD.,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**CONTROL4 CORPORATION,**<br><br>      **Defendant.** | **Civil Action No. 2:26-cv-00522**<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD (collectively "Plaintiff" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of the claims of U.S. Patent No. 8,914,526 (the "'526 patent") and U.S. Patent No. 9,961,097 (the "'097 patent") (collectively, the "Patents-in-Suit") by Defendant Control4 Corporation ("Control4" or "Defendant") during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

**I. THE PARTIES**

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of

business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Control4 Corporation is a corporation organized and existing under the laws of the State of Delaware. Defendant has a headquarters and regular and established place of business in the District of Utah, including at least 11734 S. Election Road, Salt Lake City, Utah 84020, as identified in Defendant's public business-location information. On information and belief, this location includes Control4 headquarters, engineering, product, sales, support, cloud-services, dealer-support, smart-home automation, networking, and/or commercial operations for Control4 products and services in Utah. On information and belief, Defendant sells and offers to sell products and services throughout Utah, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Utah and this judicial district. Defendant can be served through its Delaware registered agent, Intertrust Corporate Services Delaware Ltd., 251 Little Falls Drive, Wilmington, Delaware 19808, at Defendant's Utah address, or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, and/or supports infringing products, applications, cloud services, account systems, smart-home automation systems, controllers, touch screens, mobile applications, dealer-support systems, remote-monitoring systems, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

## II. JURISDICTION AND VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et

2

seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing, and supporting of the Accused Instrumentalities in the United States during the enforceable terms of the Patents-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the District of Utah has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the State of Utah.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Utah.

8. Defendant has committed acts of infringement within this District and the State of Utah by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Control4 smart-home automation systems, Control4 mobile applications, Control4 App services, Control4 Cloud services, my.control4.com services, 4Sight subscription services, Web Navigator services, Control4 account and authentication services, Control4 EA-series controllers, T3 Series touch screens, Neeo remotes and control interfaces, smart lighting, thermostats, security, comfort, audio/video, communications, networking, remote-access servers and web servers, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Utah and

within this District, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within Utah and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and Utah.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business in Salt Lake City, Utah, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is incorporated under the laws of Delaware and therefore does not reside in Utah for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, including at least 11734 S. Election Road, Salt Lake City, Utah 84020. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

## III. THE PATENTS-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiff does not seek injunctive relief or damages for any alleged

4

infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. On May 1, 2018, the '097 patent, entitled "SYSTEM FOR REMOTE ACCESS OF A USER PREMISES," was duly and legally issued by the United States Patent and Trademark Office. The face of the '097 patent identifies U.S. Patent Application No. 14/536,784, filed November 10, 2014, as a continuation of U.S. Patent Application No. 09/868,417, filed as PCT/AU99/01128 on December 17, 1999, and further states that the '097 patent is subject to a terminal disclaimer. Plaintiff asserts the '097 patent only for alleged infringement during its enforceable term and within the applicable damages period, and does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '097 patent. A true and correct copy of the '097 patent is attached hereto as Exhibit C.

15. Portus owns the entire right, title, and interest in and to the Patents-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable terms of the Patents-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patents-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patents-in-Suit during their enforceable terms.

16. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282 and claim patent-eligible subject matter.

**IV. TECHNOLOGY OF THE PATENTS-IN-SUIT**

17. The Patents-in-Suit are directed to specific technological solutions for local and remote monitoring and control of user-premises systems through standard browser-access and external network architectures. The patents explain that users of advanced automation, security,

5

access-control, and home-control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56; Ex. C, 1:16-2:42.

18. The specifications identify concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8; Ex. C, 2:40-64. The patents further identify surveillance, alarm-data, access-control, and premises-control problems, including that data could remain unprotected at the premises and that conventional systems did not provide practical remote interrogation and monitoring through a standard, location-independent interface. Ex. A, 2:9-31; Ex. C, 2:15-42.

19. The claimed inventions are not the abstract idea of remote monitoring, home automation, lighting control, thermostat control, security control, entertainment control, energy management, or presenting information. They recite particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. See, e.g., Ex. A, claim 57; Ex. C, claim 1.

20. The specifications describe concrete architectures that improve computer-network functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection

gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4; Ex. C, Abstract; 2:44-3:8. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. *Id.*

21. The claimed arrangements provide technical benefits and non-conventional features, including separating the external network and communications server from user-premises networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical connection to the premises network. Ex. A, claim 57; Ex. C, claim 1.

22. The patents further disclose concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6; Ex. C, Figs. 1-6.

23. The Patents-in-Suit therefore claim specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to apply a generic business practice on a computer. The claims are directed to particular network architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

24. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Control4 smart-home automation systems, Control4 mobile applications, Control4 App services, Control4 Cloud services, my.control4.com services, 4Sight subscription Internet Services, Web Navigator services, Control4 account and authorization systems, authentication systems, remote-access servers and web servers, Control4 EA-series controllers, T3 Series touch screens, in-wall touch screens, tabletop touch screens, Neeo remotes, Control4 OS and Navigator interfaces, Composer and OVRC remote-support services, Control4 smart lighting, thermostats, security components, audio/video components, comfort components, communications components, networking components, related user devices configured to operate with Control4 remote monitoring and access-control systems, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable terms of the Patents-in-Suit. Plaintiff's infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or supporting of those Accused Instrumentalities during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

25. The Accused Instrumentalities include at least one accused instrumentality group: Control4 smart-home automation and remote-access systems, including Control4 EA-series controllers, T3 Series touch screens, Control4 mobile applications, Control4 Cloud services, my.control4.com services, 4Sight subscription services, Web Navigator services, Control4 account, authentication, authorization, notification, dealer-support, remote-programming, and remote-access services, and connected smart-home devices such as smart lighting, thermostats,

security systems, audio/video devices, garage-door devices, sensors, communications devices, and network components. Exhibit B supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 57 of the '526 patent. Exhibit D supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 1 of the '097 patent.

**A. Control4 Smart-Home Automation and Remote-Access Systems - '526 Patent**

26. Control4 provides and supports smart-home automation and remote-access systems deployed at user premises and connected to the Control4 mobile application, my.control4.com services, 4Sight subscription services, Web Navigator services, Control4 Cloud services, and related Control4 backend infrastructure for remote monitoring and/or control. Exhibit B identifies the accused system as including the Control4 System, T3 Series touch screens, EA-series controllers, and smart devices such as lighting, thermostats, comfort devices, security devices, audio/video devices, and other networked home devices deployed within homes or user premises for remote access and remote monitoring/control of user-premises devices. Ex. B at 1-4.

27. For purposes of Plaintiff's infringement allegations under the '526 patent, Exhibit B identifies the first network as the Control4 Cloud services network; the first arrangement of processing circuitry as Control4 Cloud server/backend processing circuitry programmed to manage accounts, device registration, device-state synchronization, Internet Services, remote access, remote programming, remote support, notifications, and control; the user access browser device as smartphones, tablets, PCs, touch screens, or other user devices running the Control4 app, a web browser, Web Navigator, or access-browser functionality; and the second arrangements of processing circuitry as Control4 EA-series controllers, T3 Series touch screens, networked smart-home devices, lighting devices, thermostats, security devices, audio/video

components, and related hardware deployed in user premises networks. Ex. B at 3-15.

28. The Control4 smart-home automation systems practice the preamble and limitations [57A] and [57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Exhibit B identifies Control4 controllers, touch screens, and connected smart-home devices deployed in homes, each with embedded processors and network interfaces, connected to Ethernet, Wi-Fi, ZigBee, or other user-premises networks, and coordinated with Control4 Cloud services, my.control4.com services, 4Sight services, and Control4 app services for remote access. Ex. B at 1-15.

29. The Control4 smart-home automation systems practice limitation [57C] because the Control4 Cloud server and Control4 app backend are adapted by programming to initiate or cause the establishment of network connections with selected Control4 controllers, touch screens, lighting devices, thermostats, security devices, audio/video devices, networked components, and associated premises devices when an authorized user logs in, registers a Control4 system, selects a residence, selects a room or device, opens Web Navigator, subscribes to or uses 4Sight services, or requests remote monitoring/control through the Control4 app or my.control4.com. Exhibit B identifies that Control4 Cloud services establish network communications with registered controllers and user-premises devices to exchange control commands, device status, notifications, scenes, and monitoring information. Ex. B at 15-18.

30. The Control4 smart-home automation systems practice limitation [57D] because the Control4 app, Web Navigator, my.control4.com portal, T3 touch-screen interfaces, and

corresponding network-access functionality operate as access-browser functionality for locating and examining information on the Control4 first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, web pages, app endpoints, and user selections that cause the client to access predetermined network locations. Ex. B at 18-20. To the extent Defendant contends that a native mobile application, touch-screen interface, or Web Navigator is not literally a browser, those components are at least equivalent because they perform substantially the same access-browser function, in substantially the same URL/URI-addressed HTTP/HTTPS or network-resource way, to achieve substantially the same result of locating and examining external-network and user-premises information.

31. The Control4 smart-home automation systems practice limitations [57E] and [57F] because each registered Control4 controller, touch screen, and smart-home system is associated with a particular user premises network and has corresponding account, registration, authorization, location, residence, room, device, and/or access-permission data maintained by the Control4 Cloud services network. Control4 requires a registered Control4 system and account-related Internet Services to provide remote access, remote home monitoring and control, notifications, and support. Ex. B at 5-18.

32. The Control4 smart-home automation systems practice limitation [57G] because, after authorized access, Control4 Cloud services establish or cause establishment of a network communications session between the user device and the selected Control4 premises system or controller. Through that session, Control4 serves information concerning the user's residence, rooms, lighting, comfort, thermostat state, security state, media, connected devices, scenes, and system status, and allows control commands to be communicated to the appropriate Control4 controller or gateway device in the user premises network. Ex. B at 18-23.

11

33. The Control4 smart-home automation systems practice limitations [57H] through [57J] because the accused systems establish network communications using authentication or authorization data to identify which user-premises network and Control4 controller the user may access; connect the external Control4 Cloud server/network to the selected user-premises controller or gateway; obtain and serve device information and control interfaces; and allow remote monitoring/control without requiring the user to manually establish a direct technical connection to each local lighting, thermostat, security, audio/video, or other networked device. Ex. B at 20-30.

34. The Control4 smart-home automation systems practice the ordered combination of claim 57. The accused system is not merely a smart-home dashboard. Rather, it uses a particular external cloud network, account/authentication system, registered premises controller, remote-access service, and app/web access-browser architecture to connect an authorized remote user to a selected premises network and to serve and control information for devices that are behind or coupled through a Control4 controller or connection gateway.

35. Defendant directly infringed the '526 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, importing, operating, providing, and/or supporting the accused Control4 systems during the enforceable term of the '526 patent. Defendant used the accused systems by putting the claimed remote-access architecture into service and obtaining beneficial use from it, including by operating the Control4 Cloud services, my.control4.com services, 4Sight services, Control4 account systems, authentication systems, Control4 app backend, remote-access servers, system-registration services, dealer-support systems, notification systems, and web/cloud interfaces used with Control4 controllers and user-premises devices.

36. To the extent any element of the asserted system required action by an end user,

installer, dealer, integrator, retailer, cloud provider, or other third party, Defendant conditioned access to the Control4 system and receipt of the system's benefits on performance of those steps and established the manner or timing of performance. Defendant controls user access through account creation, login, authentication, system registration, controller setup, network configuration, dealer/integrator installation workflows, 4Sight subscription provisioning, app interface design, cloud-based authorization, server-side device-state synchronization, remote commands, and support processes. Defendant therefore directs or controls the combined performance of the accused remote-access system and obtains the benefit of the system's operation.

37. Defendant also indirectly infringed the '526 patent under 35 U.S.C. §§ 271(b) and/or 271(c), including by inducing and contributing to customers', dealers', integrators', installers', distributors', and users' infringing use of the accused systems during the enforceable term of the '526 patent. Defendant provided the Control4 app, Control4 Cloud services, my.control4.com services, 4Sight services, Control4 controllers, T3 touch screens, smart-home devices, manuals, setup guides, data sheets, support articles, dealer tools, account services, and cloud infrastructure with the knowledge and specific intent that users configure and use the accused systems to remotely monitor and/or control user-premises devices in the infringing manner alleged herein.

**B. Control4 Smart-Home Automation and Remote-Access Systems - '097 Patent**

38. Control4 also provides and supports the same accused Control4 smart-home automation and remote-access systems in a manner that infringes at least claim 1 of the '097 patent. Exhibit D identifies the accused system as including the Control4 System, T3 Series touch screens, EA-series controllers, Control4 mobile applications, Control4 Cloud services, my.control4.com services, 4Sight subscription services, Web Navigator services, and connected

smart devices such as lighting, thermostats, security systems, audio/video systems, comfort devices, and networked components deployed within user premises for remote access and remote monitoring/control. Ex. D at 1-6.

39. For purposes of the '097 patent, Exhibit D identifies a first hardware processing circuitry running an access browser module as a user's smartphone, tablet, PC, T3 touch screen, or similar device running the Control4 app, a web browser, Web Navigator, or access-browser functionality; a second hardware processing circuitry located in a first network as the Control4 Cloud server or Control4 cloud backend; and a connection gateway as a Control4 EA-series controller, including an EA-1 Controller or comparable Control4 controller, located in and forming part of the local network of the user premises. Ex. D at 1-14.

40. The Control4 smart-home automation systems practice the preamble and limitation [1A] of claim 1 because they provide a system for remote access of a user premises that includes first hardware processing circuitry running an access browser module and second hardware processing circuitry located in a first network. A user's smartphone, tablet, PC, T3 touch screen, or similar device running the Control4 app, Web Navigator, or a browser accesses Control4 Cloud services, while Control4's cloud infrastructure and backend reside outside the user premises and manage accounts, system registration, authentication, device state, Internet Services, remote access, remote support, notifications, and control. Ex. D at 1-6.

41. The Control4 smart-home automation systems practice limitation [1B] because the EA-1 Controller, other EA-series controller, or similar Control4 controller acts as a connection gateway located in and forming part of the local network of the user premises. The controller connects to the user's premises network through Ethernet, Wi-Fi, ZigBee, or other network interfaces and communicates with one or more local premises components, such as lighting

14

devices, dimmers and switches, thermostats, security devices, cameras, audio/video devices, touch screens, remotes, sensors, garage-door devices, and other Control4-compatible devices. Ex. D at 7-15.

42. The Control4 smart-home automation systems practice limitation [1C] because the second hardware processing circuitry-Control4 Cloud services and related Control4 backend processing-is external to the user premises, is accessible through the Control4 app, Web Navigator, my.control4.com, or other access-browser module, and communicates on demand with the Control4 controller or connection gateway. When a user opens the Control4 app, logs in, selects a home, selects a room, selects a device, requests status, executes a scene, changes lighting, changes a thermostat, views security information, starts or changes media, or uses 4Sight remote access, Control4 Cloud services communicate on demand with the premises controller/gateway. Ex. D at 5-18.

43. The Control4 smart-home automation systems practice limitation [1D] because the connection gateway is integrated with or communicatively coupled to one or more networked components of the local network of the user premises, including lighting devices, thermostats, security components, sensors, audio/video devices, touch screens, remotes, comfort systems, communications systems, and other Control4-compatible devices. Ex. D at 9-22.

44. The Control4 smart-home automation systems practice limitation [1E] because the accused system is configured such that user input of a URL, URI, deep link, endpoint, or app-interface selection causes the first hardware processing circuitry, using the access browser module, to access an address on the Control4 first network and begin a sequence in which Control4 Cloud services responsively serve information to the user device via the Control4 app, Web Navigator, my.control4.com, or other access-browser module. The information includes

15

device status, lighting state, thermostat state, security state, comfort settings, scenes, rooms, media information, notifications, system information, and/or other information regarding networked components of the local network. Control4 Cloud services obtain that information from the Control4 controller or connection gateway without a direct communicative coupling between the cloud services and each local lighting device, thermostat, security device, audio/video component, or other networked component. Ex. D at 18-25.

45. The Control4 smart-home automation systems practice limitations [1F] through [1H] because the remote-access sequence includes the user device accessing the Control4 first network, Control4 Cloud services using stored user/account/system authorization data to identify the premises network, residence, controller, or gateway that the user may access, Control4 Cloud services communicating with the selected connection gateway on demand, and Control4 Cloud services serving information and control interfaces back to the user's Control4 app, Web Navigator, or access-browser module. Ex. D at 23-30.

46. The Control4 smart-home automation systems practice limitations [1I] through [1J] because Control4 Cloud services establish or cause a communications session between the user device and the connection gateway of the respective local network that the authentication data indicates authority to access, and the system obtains, transmits, and/or stores selected information from one or more networked components of the user premises network for subsequent review by a user associated with that premises. Ex. D at 31-35.

47. The Control4 smart-home automation systems practice the ordered combination of claim 1. In the accused systems, the user device and Control4 app do not communicate directly with every local lighting, thermostat, security, audio/video, comfort, or other networked component. Rather, Control4's external cloud services authenticate the user, identify the

authorized premises and Control4 controller, obtain information from the controller or connection gateway, and serve information and command interfaces to the user through the Control4 app, Web Navigator, or other access-browser module.

48. Defendant directly infringed the '097 patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale, importing, operating, providing, and/or supporting the accused Control4 systems during the enforceable term of the '097 patent. Defendant used the accused systems by putting the claimed remote-access architecture into service and obtaining beneficial use from it, including by operating the Control4 Cloud services, account systems, authentication systems, Control4 app backend, my.control4.com services, 4Sight services, Web Navigator services, remote-access servers, system-registration services, notification systems, dealer-support systems, and web/cloud interfaces used with Control4's premises controllers and connected devices.

49. To the extent any element of claim 1 required action by an end user, installer, dealer, integrator, retailer, cloud provider, or other third party, Defendant conditioned access to the Control4 system and receipt of the system's benefits on performance of those steps and established the manner or timing of performance. Defendant controls user access through account creation, login, authentication, system registration, controller setup, network configuration, dealer/integrator workflows, cloud-based authorization, 4Sight subscription access, app interface design, and server-side control of device-state synchronization and remote commands. Defendant therefore directs or controls the combined performance of the accused remote-access system and obtains the benefit of the system's operation.

50. Defendant also indirectly infringed the '097 patent under 35 U.S.C. §§ 271(b) and/or 271(c) by inducing and contributing to customers', installers', dealers', integrators', distributors',

17

and users' infringing use of the accused systems during the enforceable term of the '097 patent. Defendant provided the Control4 app, Control4 controllers, T3 touch screens, Control4 Cloud services, my.control4.com services, 4Sight services, Web Navigator services, smart-home devices, manuals, setup guides, data sheets, support articles, dealer tools, account services, and cloud infrastructure with the knowledge and specific intent that users configure and use the accused systems to remotely monitor and/or control user-premises devices in the infringing manner alleged herein.

## VI. COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,914,526

51. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

52. Defendant has infringed, literally and/or under the doctrine of equivalents, one or more claims of the '526 patent, including at least claim 57, by making, using, selling, offering for sale, importing, operating, providing, maintaining, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '526 patent and within the applicable damages period.

53. Defendant's infringement has caused and will continue to cause Plaintiff damages for infringing acts occurring during the enforceable term of the '526 patent and within the applicable damages period. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement, in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

54. Plaintiff does not seek damages for any alleged infringement of the '526 patent after expiration of the '526 patent and does not seek injunctive relief based on the '526 patent.

## VII. COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,961,097

55. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

56. Defendant has infringed, literally and/or under the doctrine of equivalents, one or more claims of the '097 patent, including at least claim 1, by making, using, selling, offering for sale, importing, operating, providing, maintaining, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '097 patent and within the applicable damages period.

57. Defendant's infringement has caused and will continue to cause Plaintiff damages for infringing acts occurring during the enforceable term of the '097 patent and within the applicable damages period. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement, in no event less than a reasonable royalty, together with interest and costs as fixed by the Court.

58. Plaintiff does not seek damages for any alleged infringement of the '097 patent after expiration of the '097 patent and does not seek injunctive relief based on the '097 patent

## VIII. CONDITIONS PRECEDENT

59. Plaintiff has never sold a product. Upon information and belief, no Plaintiff predecessor-in-interest has ever sold a product. Neither Plaintiff nor any licensee made or sold a patented article. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

60. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article,

19

for or under Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

61. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to show that the alleged unmarked product does not practice the Patents-in-Suit and/or that Plaintiff has substantially complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiff.

62. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

63. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for each prior settlement license.

64. Each settlement license that was entered into between a defendant entity and Plaintiff was negotiated in the face of continued litigation and, while Plaintiff believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

65. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to make an effort to require a prior settling defendant to mark products Plaintiff had accused of infringement. To the extent necessary, Plaintiff will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patents-in-Suit.

## IX. DEMAND FOR JURY TRIAL

66. Plaintiff demands a trial by jury on all issues so triable.

### IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a. That Defendant infringed one or more claims of the '526 patent during the enforceable term of the '526 patent and within the applicable damages period;

b. That Defendant infringed one or more claims of the '097 patent during the enforceable term of the '097 patent and within the applicable damages period;

c. That Plaintiff be awarded damages adequate to compensate for Defendant's infringement, in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs as allowed by law;

d. That this case be declared exceptional under 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys' fees, expenses, and costs; and

e. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

Dated: June 4, 2026                    Respectfully submitted,

**RAMEY LLP**

*/s/William P. Ramey III*
William P. Ramey, III
Utah Bar No. 10901
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)
wramey@rameyfirm.com

***Attorneys for Portus Singapore PTE Ltd., &
Portus PTY Ltd.***